IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
TWENTY-FIRST JUDICIAL CIRCUIT
STATE OF MISSOURI

| | |
|---|---|
| BARB SCHMANK ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 22SL-CC03779 |
| vs. ) | |
| ) | Division: 8 |
| MISSOURI BAPTIST MEDICAL ) | |
| CENTER ) | |
| ) | |
| Serve at Registered Agent: ) | |
| ) | |
| CSC Lawyers Incorporating ) | |
| Service Company ) | |
| 221 Bolivar St. ) | |
| Jefferson City, MO 65101 ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

## FIRST AMENDED PETITION

COMES NOW Plaintiff, Barb Schmank, by and through counsel, and for her claim against Defendant Missouri Baptist Medical Center., hereby states and alleges as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff is, and was at all times relevant herein, a resident of St. Louis County, State of Missouri, and an individual over the age of 21 years.

2. Defendant Missouri Baptist Medical Center is, and was at all times relevant herein, a corporation licensed to do business in Missouri.

3. Venue and jurisdiction are proper under RSMo §508.010, in that the discrimination at issue occurred in St. Louis County.

4. On or around July 10, 2017, Plaintiff began working for Missouri Baptist Medical Center as the Manager of Labor and Delivery at Missouri Baptist Hospital in St. Louis County, Missouri.

1

5.      Upon hire, Plaintiff's immediate supervisor was Karen Barnes. Barnes' role changed, and for a time Plaintiff's supervisor was Pam Brouder. Then in January 2020, Pam Brouder hired one of her friends, Catherine Reese, as the Director of Women and Infants, and Ms. Reese became Plaintiff's supervisor.

6.      On or around February 2020, at a regular one-on-one meeting with Ms. Reese, Plaintiff informed her that she would be having some outpatient surgery in the near future, with an approximate 2-week recovery time.

7.      Ms. Reese repeatedly pushed Plaintiff to take 6 weeks off to recover, which made her feel uncomfortable and awkward because Plaintiff did not perceive that to be medically necessary. During the same conversation, Plaintiff informed Ms. Reese that she suffered from a genetic condition, called Hereditary Pheochromocytoma Paraganglioma Syndrome. Reese responded very dismissively toward Plaintiff.

8.      Approximately one week later, Ms. Reese approached me about moving to a new role. While Ms. Reese was very insistent that Plaintiff consider changing to this role, she perceived this new role of Quality Management position, to be a demotion for several reasons:

   a. Because the role would have no direct reports, this would mean that there would be much lesser pay and responsibilities;

   b. Reese made comments that Plaintiff perceived to be ageist in nature, such as stating that Plaintiff would "work a lot of hours" and that "at this point in [her] career" she should seriously consider moving to a less stressful position;

  c. Plaintiff did not reasonably believe that her medical conditions or her age was affecting her work performance in any negative way, nor was she aware of any performance evaluations which would indicate such;

  d. Plaintiff learned from other employees that the Quality Management position was potentially going to be eliminated, and that others who were currently in that role were already searching for other jobs. As far as Plaintiff is aware, the Quality Management position that Ms. Reese was pushing her to take was never posted internally or filled by any other person.

9. Plaintiff reported Ms. Reese's comments and her actions to Human Resources on February 23, 2020, stating my belief that her actions were discriminatory based on her age.

10. When the COVID-19 pandemic hit, some employees in the Women and Infants section were asked to take a paid furlough in March or April 2020.

11. In May 2020, Plaintiff was placed on an unpaid furlough. The only other person in leadership (an assistant nurse manager) in Labor and Delivery who was placed on an unpaid furlough at that time was very quickly offered "redeployment" to another role in the hospital.

12. Plaintiff was told by both Ms. Reese and Human Resources that the furlough could last anywhere from 2 weeks to 6 months, but that it was anticipated that people would be called back to work in approximately 8 weeks.

13. However, while other managers at the hospital were placed on unpaid furlough, Plaintiff became the only one she was aware of who had their position eliminated.

14. During this time of being was on furlough, I elected to have my outpatient surgery performed.

3

15. After Plaintiff recovered fully from an outpatient surgery she underwent during her time of being furloughed, she then inquired on multiple occasions about potentially being redeployed to other roles at the hospital. Unfortunately, Plaintiff had very little contact from management.

16. Plaintiff applied for Patient Quality Safety Risk Management Specialist, an internal position Plaintiff reasonably believed she was very highly qualified for.

17. When Plaintiff spoke with the recruiter hiring for that position, she was told that the maximum salary was $86,000.00, which would have been more than a 20 percent cut from what Plaintiff was originally making. Upon being told during her interview for the position that $86,000.00 was the maximum salary, Plaintiff withdrew from consideration based on this information.

18. Plaintiff was later told by a colleague who inquired about the same job (and who was less experienced than her) that she was told the position paid $98,000.00.

19. Plaintiff would not have withdrawn from consideration for the position if she had been told that it paid $98,000.00.

20. On July 27, 2020, Plaintiff was informed that her position was being eliminated and that she would no longer employed by Missouri Baptist Medical Center.

21. Furthermore, Plaintiff suffered from emotional distress and 10-11 months of lost wages, before finding employment elsewhere.

22. Plaintiff dual-filed her charge of discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC). She obtained a notice of the right to sue from the EEOC on May 27, 2022 and from the MCHR on July 12, 2022.

## COUNT I: EMPLOYMENT DISCRIMINATION UNDER MHRA

COMES NOW Plaintiff Barb Schmank, and for her claim of employment discrimination, states as follows:

23. Plaintiff adopts and reincorporates all of the above paragraphs here again.

24. The Missouri Human Rights Act prohibits discrimination in housing, employment, and places of public accommodations based on race, color, religion, national origin, ancestry, sex, disability, age (in employment only), and familial status (in housing only).

25. An employee or applicant with a disability is an individual who:

   a. has a physical or mental impairment that substantially limits a major life activity;

   b. is regarded as having such an impairment; or

   c. has a record of having such an impairment and, with or without reasonable accommodation, can perform the essential functions of the job in question, utilize the place of public accommodations or occupy the dwelling in question.

26. An employer is required to make a reasonable accommodation to the known disability of an applicant or employee if it would not impose an undue hardship on the operation of the employer's business.

27. A "reasonable accommodation" may include:

   a. making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

   b. job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices,

   appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

28. Undue hardship is one that imposes significant difficulty or expense when considered in light of factors such as the employer's size, financial resources, and the nature and structure of its operation.

29. Plaintiff has complied with all procedural regulations required to proceed with her lawsuit for violation of the Missouri Human Rights Act (MHRA) due to the following:

 a. Plaintiff Schmank was a member of the class of persons with disabilities protected by the MHRA;

 b. Plaintiff was demoted to a disposable position of employment one week after Plaintiff informed Ms. Reese that she suffered from a genetic condition, called Hereditary Pheochromocytoma Paraganglioma Syndrome and after requesting two-weeks off to undergo an outpatient surgery and recovery;

 c. Plaintiff was urged to step into the Quality Management position, because of her because of her number of years of work, implying that she is too elderly to fulfill her prior duties as Manager of Labor and Delivery;

 d. Plaintiff's age or genetic disorder did not affect her work performance in a negative way, nor was Plaintiff aware of any performance reviews that indicated such;

 e. Plaintiff was provided lesser wage opportunities in comparison to other younger employees who do not have genetic disorders;

   f. Plaintiff was the only Plaintiff was the only furloughed employee who employment was terminated at Missouri Baptist Medical Center.

WHEREFORE Plaintiff Requests that the Court enter judgment in her favor, for attorneys' fees, punitive damages and post judgement interest, and for any other relief as may be just and proper.

## COUNT II: EMPLOYMENT DISCRIMINATION UNDER ADA

COMES NOW Plaintiff Barb Schmank, and for her claim of employment discrimination, states as follows:

30. Plaintiff adopts and reincorporates all of the above paragraphs here again.

31. The Americans with Disabilities Act (ADA) prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment.

32. Under the ADA, the term "disability" means, with respect to an individual:

  a. a physical or mental impairment that substantially limits one or more major life activities of such individual;

  b. a record of such an impairment; or

  c. being regarded as having such an impairment.

33. Furthermore, the ADA imposes an additional requirement that employers must reasonably accommodate disabilities in the workplace. A failure to do so may result in a violation of the ADA, even where there is no other adverse action taken against an employee.

34. A "reasonable accommodation" may include:

Electronically Filed - St Louis County - November 18, 2022 - 04:07 PM

a. making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

b. job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

35. Plaintiff has complied with all procedural regulations required to proceed with her lawsuit for violation of the ADA due to the following:

a. Plaintiff Schmank was a member of the class of persons with disabilities protected by the ADA;

b. Plaintiff was demoted to a disposable position of employment one week after Plaintiff informed Ms. Reese that she suffered from a genetic condition, called Hereditary Pheochromocytoma Paraganglioma Syndrome and after requesting two-weeks off to undergo an outpatient surgery and recovery;

c. Plaintiff's genetic disorder did not affect her work performance in a negative way, nor was Plaintiff aware of any performance reviews that indicated such;

d. Plaintiff was provided lesser wage opportunities in comparison to other employees who do not have genetic disorders;

e. Plaintiff was the only Plaintiff was the only furloughed employee who employment was terminated at Missouri Baptist Medical Center.

Electronically Filed - St Louis County - November 18, 2022 - 04:07 PM

Electronically Filed - St Louis County - November 18, 2022 - 04:07 PM

WHEREFORE Plaintiff Requests that the Court enter judgment in her favor, for attorneys' fees, punitive damages and post judgement interest, and for any other relief as may be just and proper.

### COUNT III: EMPLOYMENT DISCRIMINATION UNDER ADEA

COMES NOW Plaintiff Barb Schmank, and for her claim of employment discrimination, states as follows:

36. Plaintiff adopts and reincorporates all of the above paragraphs here again.

37. The Age Discrimination in Employment Act of 1967 (ADEA) makes it unlawful to discriminate against any individual age 40 or older because of his/her age with respect to any term, condition, or privilege of employment, including but not limited to, recruitment, hiring, firing, promotion, layoff, compensation, benefits, job assignments, and training

38. Plaintiff has complied with all procedural regulations required to proceed with her lawsuit for violation of the ADEA due to the following:

   a. Plaintiff Schmank was a member of the class of persons protected by the ADEA;
   b. Plaintiff was discriminated against because of her age;
   c. Plaintiff was demoted to a disposable position of employment, because of her number of years of work;
   d. Plaintiff's age did not affect her work performance in a negative way, nor was Plaintiff aware of any performance reviews that indicated such;
   e. Plaintiff was provided lesser wage opportunities in comparison to other employees who were younger than Plaintiff;

9

  f. Plaintiff was the only furloughed employee who employment was terminated at Missouri Baptist Medical Center.

WHEREFORE Plaintiff Requests that the Court enter judgment in her favor, for attorneys' fees, punitive damages and post judgement interest, and for any other relief as may be just and proper.

### COUNT IV: EMPLOYMENT DISCRIMINATION UNDER GINA

COMES NOW Plaintiff Barb Schmank, and for her claim of employment discrimination, states as follows:

39. Plaintiff adopts and reincorporates all of the above paragraphs here again.

40. The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits discrimination on the basis of genetic information with respect to health insurance and employment.

41. Plaintiff has complied with all procedural regulations required to proceed with her lawsuit for violation of the ADA due to the following:

  a. Plaintiff Schmank was a member of the class of persons protected by GINA;

  b. Plaintiff was demoted to a disposable position of employment one week after Plaintiff informed Ms. Reese that she suffered from a genetic condition, called Hereditary Pheochromocytoma Paraganglioma Syndrome;

  c. Plaintiff's genetic disorder did not affect her work performance in a negative way, nor was Plaintiff aware of any performance reviews that indicated such;

  d. Plaintiff was provided lesser wage opportunities in comparison to other employees who do not have genetic disorders;

10

      e. Plaintiff was the only Plaintiff was the only furloughed employee who employment was terminated at Missouri Baptist Medical Center.

WHEREFORE Plaintiff Requests that the Court enter judgment in her favor, for attorneys' fees, punitive damages and post judgement interest, and for any other relief as may be just and proper.

Respectfully submitted,

**OTT LAW FIRM**

_____
Joseph A. Ott, #67889

_____
Mark E. Blankenship Jr., #73123

3544 Oxford Blvd
Maplewood, MO 63143
Telephone:  (314) 293-3756
Facsimile:   (314) 689-0080
joe@ott.law
mark@ott.law
*Attorneys for Plaintiff*