**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

BARB SCHMANK, )
)
        Plaintiff, )
)
        v. ) No. 4:23-CV-148 HEA
)
MISSOURI BAPTIST MEDICAL )
CENTER, )
)
        Defendant. )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Missouri Baptist Medical Center ("MBMC").  (ECF No. 61). Plaintiff Barb Schmank opposes the motion, which is fully briefed and ripe for review.  For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

### I.    Procedural Background

Plaintiff originally filed suit in state court on August 24, 2022.  MBMC was not served until January 9, 2023, and it removed the cause of action to federal court on February 8, 2023, on the basis of federal question subject matter jurisdiction, pursuant to 28 U.S.C. § 1331. Plaintiff's Amended Petition ("Complaint"), which was originally filed in state court, is the operative complaint in this suit.

In her Complaint, Plaintiff brings the following claims against MBMC: Employment Discrimination under the Missouri Human Rights Act ("MHRA"), Mo.

Rev. Stat. §§ 213.010, *et seq.* (Count I); Employment Discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C §§ 12101, *et seq*. (Count II); Employment Discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C.A. § 621*, et seq.* (Count III); Employment Discrimination under the Genetic Information Nondiscrimination Act of 2008 ("GINA"), 42 U.S.C. §§ 2000ff, *et seq.* (Count IV).  For relief, Plaintiff seeks attorneys' fees, punitive damages, and post judgment interest.  MBMC moves for the entry of summary judgment as to all four counts.

### III.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).  Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a

genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, *see Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

### *III.* Undisputed Facts

On July 10, 2017, MBMC hired Plaintiff as a Nurse Manager for the Labor and Delivery in the Women and Infants Service Line ("Service Line"). Near the

beginning of February 2020, Plaintiff had one-on-one meetings with her supervisor, Cathy Reese, Director of the Service Line, and during one such meeting, Plaintiff shared that she was planning outpatient surgery.  Ms. Reese was not told, and she did not ask for specific information related to the surgery, although Plaintiff did tell her enough that she understood it to be related to gynecological issues.  Ms. Reese told Plaintiff to take as much time as was available to her.  Plaintiff believed that Ms. Reese was pushing her to take six weeks off to recover, which made Plaintiff uncomfortable because Plaintiff did not believe six weeks for recovery was medically necessary.  Plaintiff also shared with Ms. Reese that she had Hereditary Pheochromocytoma Paraganglioma Syndrome, a medical condition unrelated to the surgery, but that she was "concerned about some things with anesthesia."[1]  (ECF No. 67, Ex.1 at 6).  Plaintiff testified at her deposition, that "I can't think of anything that [the syndrome] is preventing me from doing."  (ECF No. 67 at 4, ¶ 9).

---

[1]The National Cancer Institute describes Hereditary Pheochromocytoma Paraganglioma Syndrome as follows:

> A rare, genetic disorder marked by tumors called paragangliomas, which are found in paraganglia. Paraganglia are groups of nerve-like cells found near the adrenal glands and near blood vessels or nerves in the head, neck, chest, abdomen, and pelvis. Paragangliomas that form in the adrenal glands are called pheochromocytomas. Paragangliomas are usually benign (not cancer), but sometimes become malignant (cancerous). People with hereditary paraganglioma-pheochromocytoma syndrome usually have more than one paraganglioma and may have an increased risk of certain types of cancer, such as kidney cancer and thyroid cancer.

> *See* https://www.cancer.gov/publications/dictionaries/cancer-terms/def/hereditary-paraganglioma-pheochromocytoma-syndrome (last visited Apr. 28, 2025).

Approximately a week later, Ms. Reese approached Plaintiff about applying for the Quality Management position. Plaintiff perceived this position to be a demotion because she would have no direct reports, and she had learned from other employees that the position might be eliminated. There is no evidence that Plaintiff applied for the Quality Management position or that she was ever assigned to this position.

On February 23, 2020, Plaintiff had a meeting with HR Business Partner Mindy McNamee about Ms. Reese's comments regarding Plaintiff's surgery and about the Quality Management position. Plaintiff informed Ms. McNamee that she viewed Ms. Reese's comments as discriminatory on the basis age. Plaintiff asserts that she also stated that she viewed Ms. Reese's comments as discriminatory on the basis of her genetic information. MBMC disputes that Plaintiff raised the issue of genetic discrimination.

From March 2020 to May 2020, Ms. Reese began cancelling Plaintiff's one-on-one meetings without any explanation. Plaintiff also perceived that Ms. Reese became more agitated with her more than any of her colleagues.

In the spring of 2020, the COVID-19 pandemic presented significant challenges for many businesses, including those in the healthcare industry. To address financial strains that resulted from effects of the pandemic, MBMC placed employees on furlough. The furloughs were expected to last between eight weeks

to six months.  In order to meet initial goals for reduced expenses, the Service Line identified the need to reduce one Nurse Manager position.  At the time, there were the following four Nurse Managers in the Service Line:  Plaintiff, who was 61 and was hired on July 10, 2017; Karen Johnson, who was 52 and was hired on June 4, 1990; Emily Petersen, who was 46 and was hired on November 2, 1998; and Anna "Nikki" Bentley, who was 31 and was hired on June 1, 2015.  Plaintiff was the least senior Nurse Manager in the Service Line and was selected to be placed on furlough, which began mid-May 2020.

Plaintiff had hysterectomy surgery during the time she was on furlough.  On or about June 12, 2020, Plaintiff informed Ms. Reese that she had recovered and was available to return to work.  Plaintiff was not called back to work.  By mid-July 2020, the Service Line was facing the need to make more permanent cost savings.  As Director of the Service Line, Ms. Reese was tasked with eliminating a Nurse Manager position within the Service Line.  Ms. Reese determined Plaintiff's job would be eliminated, and Plaintiff was advised of the decision on July 27, 2020, with an effective date of August 26, 2020.  Plaintiff's job duties were distributed among the remaining managers.  During her employment at MBMC, Plaintiff was never disciplined formally for performance related issues.

On November 15, 2020, Plaintiff dually filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment

Opportunity Commission ("EEOC").  Plaintiff checked the boxes for retaliation, age, and genetic information.  Plaintiff received right-to-sue letters from the EEOC on May 27, 2022, and from the MCHR on July 12, 2022.  Plaintiff filed suit on August 24, 2022.

## IV.  *Discussion*

MBMC moves for summary judgment as to all counts in Plaintiff's Complaint on a number of grounds.  With regard to Plaintiff's claims under the MHRA in Count I, MBMC argues the claims are barred by the MHRA two-year statute of limitations. As to Plaintiff's claims for age discrimination under the MHRA and ADEA, Defendant argues Plaintiff has not put forth direct evidence of age discrimination. Alternatively, MBMC argues that Plaintiff fails to establish a *prima facie* case of age discrimination under the *McDonnell Douglas* framework because she was not meeting MBMC's reasonable expectations at the time of her discharge, and she was not replaced by someone younger.  MBMC also argues there was a legitimate non-discriminatory reason for terminating Plaintiff's employment – MBMC was facing great financial difficulties as a result of the COVID-19 pandemic, and Ms. Reese made the decision to discharge the Nurse Manager with the least amount of seniority, which was Plaintiff.  Concerning Plaintiff's claims of disability discrimination under the MHRA and ADA, MBMC argues that Plaintiff failed to exhaust her administrative remedies in that she did not make a claim of disability discrimination

when she filed her charge with the EEOC and MCHR. Defendant also make the same argument that Plaintiff fails to establish a *prima facie* case of disability discrimination and that there was a legitimate non-discriminatory reason for the termination of her employment.

### A. Waiver of Arguments

In her Memorandum in Opposition, Plaintiff did not respond to any of the arguments MBMC made in support of its motion for summary judgment as to Counts I-III. A party's failure to oppose a basis for summary judgment amounts to a waiver of that argument. *See City of Kennett, Missouri v. Env't Prot. Agency*, 887 F.3d 424, 430 (8th Cir. 2018); *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)). The Court finds Plaintiff has waived arguments in opposition to the entry of summary judgment as to Counts I-III, and MBMC is entitled to summary judgment as to Plaintiff's claims in these three counts. Remaining for the Court's resolution are MBMC's arguments in support of the entry of summary judgment as to Count IV, which Plaintiff did oppose.

### B. Plaintiff's Claim under GINA

Count IV of the Complaint, Plaintiff brings a claim of employment discrimination under GINA. Plaintiff alleges MBMC discriminated against her in that she was demoted to a "disposable" position one week after she told Ms. Reese

that she had Hereditary Pheochromocytoma Paraganglioma Syndrome, and she was later discharged. (ECF No. 8 at 10-11, ¶ 41).

Under GINA, it is unlawful for an employer to discriminate against an employee based on genetic information. More specifically, the statute provides as follows:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee; or

(2) to limit, segregate, or classify the employees of the employer in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee, because of genetic information with respect to the employee.

42 U.S.C. § 2000ff-1(a)(1)-(2).

GINA defines "genetic information" as information about (1) an individual's genetic tests; (2) the genetic tests of the individual's family members; (3) the manifestation of a disease or disorder of the individual's family members; (4) an individual's request for, or receipt of, genetic services, or the participation in clinical research that includes genetic services by the individual or the individual's family member; or (5) the genetic information of a fetus or embryo. *See* 42 U.S.C. § 2000ff(4)(A); 29 C.F.R. § 1635.3(c).

MBMC argues Plaintiff has presented no evidence that Ms. Reese had knowledge of genetic information with respect to Plaintiff, and even if she had, there is no evidence that Plaintiff's medical condition was used by MBMC in its decisions to place Plaintiff on furlough and ultimately eliminate her position.

It is undisputed that in February 2020, Plaintiff shared with Ms. Reese that she has Hereditary Pheochromocytoma Paraganglioma Syndrome. Although it is disputed, Plaintiff attests that she also told Ms. Reese that several of her family members have the syndrome, and that her brother died from it. MBMC argues that the Court must disregard this disputed evidence because it was submitted to the Court by affidavit, and at no point prior to responding to MBMC's Motion for Summary Judgment did Plaintiff testify that she told Ms. Reese other members of her family had the same syndrome. In other words, MBMC urges the Court to disregard the evidence as part of a sham affidavit.

Affidavits based on personal knowledge are admissible evidence for purposes of summary judgment. See Fed. R. Civ. P. 56(c)(4); *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013) (an affidavit or declaration based on personal knowledge must be considered for purposes of summary judgment). However, "[i]t is well-settled that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." *Button v. Dakota, Minnesota & E. R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020). An affidavit is a

sham and should be disregarded if it *contradicts* prior testimony and creates an issue of material facts that were not there before. *Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021) (emphasis added). However, not all discrepancies point to a sham affidavit. *See, e.g.*, *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) (an affidavit that expands on information not specifically asked about in a deposition is not a sham affidavit). MBMC argues Plaintiff was deposed for nearly four hours and did not mention that she told Ms. Reese about her family and brother's death, but MBMC points to no passage in the deposition transcript that demonstrates a contradiction, for example, that plaintiff was specifically asked whether she shared information about her family with Ms. Reese, and she testified that she did not. *Cf. Setchfield v. St. Charles Cnty.*, 109 F.4th 1084, 1091 (8th Cir. 2024) (finding affidavit where Plaintiff mentioned for the first time certain statements in a conversation was not a sham because, among other thing, the affidavit testimony did not contradict the deposition testimony, but rather it expanded it). The Court declines to search through the deposition looking for questions that would have solicited such a response or contradictory statements and, therefore, finds MBMC has not established Plaintiff's affidavit is a sham.

The Court finds there is evidence, albeit disputed, that Plaintiff told Ms. Reese she has a hereditary syndrome – meaning it was determined by genetic factors – and that her family members also had manifestations of same syndrome. For purposes

of deciding MBMC's Motion for Summary Judgment, the Court finds Plaintiff has put forth evidence such that a finder-of-fact could conclude that Plaintiff's supervisor, Ms. Reese, had knowledge of genetic information about Plaintiff within the meaning of the GINA.  42 U.S.C. § 2000ff(4)(A).

The Court now turns to whether there is evidence that MBMC discharged or otherwise discriminated against Plaintiff because of this genetic information.  GINA was enacted in 2008, but neither the United States Supreme Court nor the Court of Appeals for the Eighth Circuit has analyzed a claim of employment discrimination under GINA, and there is little case law on the subject from other circuits.

MBMC urges the Court to apply the legal standards from other federal anti-discrimination statutes and conclude that Plaintiff has failed to show that her genetic information was the "but-for" or "motivating factor" in MBMC's decisions to furlough Plaintiff and terminate her employment.  MBMC argues that the Court should find that Plaintiff's GINA claim fails under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which was developed in a Title VII case but has been used for claims under other employment discrimination statues. *See Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 827 (5th Cir. 2015) (holding district court's analysis of a GINA retaliation claim under *McDonnell Douglas* was not "plainly erroneous").

Plaintiff responds that the "motivating factor" standard and the *McDonnell Douglas* burden-shifting framework do not apply to GINA discrimination claims. Plaintiff contends that she need only prove "(1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from [her] genetic tests." (ECF No. 66 at 12) (quoting *Allen v. Verizon Wireless*, No. 3:12-CV-482 JCH, 2013 WL 2467923, at *23 (D. Conn. June 6, 2013); *Perry v. John A. Guerrieri, DDS PLLC*, 518 F. Supp. 3d 665 (W.D.N.Y. 2021).

The Court finds MBMC's argument – that the legal framework used in Title VII cases and other federal anti-discrimination statutes should be employed to analyze Plaintiff's discrimination claim under GINA – is persuasive. The language of GINA tracks the language of Title VII's anti-discrimination provisions, and both statutes prohibit employers from taking certain actions "because of" certain traits, conditions, or characteristics. *Compare* 42 U.S.C. § 2000ff-1(a) ("It shall be an unlawful employment practice for an employer … to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, *because of* genetic information with respect to the employee") *with* 42 U.S.C. § 2000e-2 ("It shall be an unlawful employment practice for an employer… to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, *because of* such individual's race, color, religion, sex, or national origin"). An employment discrimination claim under GINA is a disparate treatment case where "liability depends on whether the protected trait … actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). While the protected trait in GINA cases is genetic information, as opposed to race, color, religion, sex, national origin, age or disability, the other elements to establish liability under GINA are the same elements that a plaintiff must show for disparate treatment claims under Title VII, ADEA, or ADA. *See Ortiz*, 806 F.3d at 827; *Punt v. Kelly Servs.*, No. 14-CV-02560-CMA-MJW, 2016 WL 67654, at *13 (D. Colo. Jan. 6, 2016), *aff'd,* 862 F.3d 1040 (10th Cir. 2017) (finding Title VII burden-shifting framework should apply to GINA claim for the same reasons it applied to ADA claim); *Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, 49 F. Supp. 3d 321, 327–28 (E.D.N.Y. 2014) (finding "the familiar burden shifting framework" should apply to claims under GINA); *Conner-Goodgame v. Wells Fargo Bank, N.A.*, No. 2:12-CV-03426-IPJ, 2013 WL 5428448, at *10 (N.D. Ala. Sept. 26, 2013) ("[b]ecause GINA's anti-retaliation provision tracks the language of Title VII's anti-retaliation provision, the court has analyzed Plaintiff's retaliation claim under Title VII's framework for retaliation."). Using the legal framework employed in other federal discrimination suits, the Court now turns to whether there

is a genuine dispute of material fact as to Plaintiff's claim under GINA of disparate treatment based on her genetic information.

To survive a motion for summary judgment on a discrimination claim, "a plaintiff must present admissible evidence directly indicating unlawful discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas*." *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115–16 (8th Cir. 2018) (citing *McDonnell Douglas Corp.*, 411 U.S. 792). Direct evidence "shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012) (citation omitted). "Direct evidence [ ] may include evidence of actions or remarks of the employer that reflect a discriminatory attitude, comments which demonstrate a discriminatory animus in the decisional process, or comments uttered by individuals closely involved in employment decisions." *King v. United States*, 553 F.3d 1156, 1161 (8th Cir. 2009). Direct evidence "must relate to people with decision-making authority" and does not include "stray remarks in the workplace" or "statements by nondecisionmakers." *Moody v. Vozel*, 771 F.3d 1093, 1096 (8th Cir. 2014) (internal citation omitted).

Plaintiff has not set forth any facts, whether disputed or not, that amounts to direct evidence of discrimination based on genetic information.  It is undisputed that Ms. Reese was the decisionmaker in this case, but there is no evidence that at the time Plaintiff was placed on furlough or when she was eventually discharged that Ms. Reese made any written or oral comments or statements that would support a finding that her decision was based, even in part, on Plaintiff's genetic information. Plaintiff has pointed to no facts that amount to direct evidence of discrimination. Therefore, the issue becomes one of indirect evidence, and the *McDonnell Douglas* burden shifting framework applies.

Plaintiff must establish an inference of unlawful discrimination.  To establish an inference of unlawful discrimination, there are three steps: (1) the plaintiff must establish the *prima facie* case for discrimination; (2) the burden of production then shifts to the employer to show a legitimate, non-discriminatory reason for its decision; and, if the employer produces such evidence, (3) the burden of production shifts back to the plaintiff to show the proffered reason was mere pretext for intentional discrimination. *See McDonnell Douglas*, 411 U.S. at 802–05; *see also Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1125–26 (8th Cir. 2017).

A *prima facie* case of discrimination requires Plaintiff to show: (1) she is a member of a protected class; (2) she was meeting the legitimate expectations of the employer; (3) she suffered an adverse employment action; and (4) suffered under

16

circumstances permitting an inference of discrimination. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) (citing *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)).  Although MBMC disputes Plaintiff was meeting legitimate expectations, for purposes of summary judgment, the Court finds Plaintiff has set forth sufficient evidence to establish the first three elements of her *prima facie* case.  Plaintiff is a member of GINA's protected class; she was meeting MBMC's legitimate expectations at the time in that she was performing her job without any disciplinary actions against her, and she suffered an adverse employment action, because she was placed on furlough and later discharged.

As for whether Plaintiff has shown there are circumstances giving rise to an inference of discrimination, Plaintiff argues that she meets this element of her case because she has evidence that MBMC's proffered reasons for her being placed furlough and eventually discharged were pretextual for discrimination based on her genetic disorder.  Evidence of pretext is normally considered at the last step of the *McDonnell Douglas* analysis, but it can also "satisfy the inference-of-discrimination element of the *prima facie* case."  *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014).  "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Id.*

17

MBMC has presented evidence to show that there were legitimate, non-discriminatory reasons for both its decision to place Plaintiff on furlough and to terminate her employment. MBMC needed to reduce costs due to the COVID 19 pandemic. In the Service Line, one Nurse Manager was placed on furlough, and Ms. Reese selected Plaintiff because she had the least seniority among the Nurse Managers. Ms. Reese was later tasked with eliminating a Nurse Manager position in the Service Line, and she determined that Plaintiff's job would be eliminated for the same reason. The Court finds cost reduction, selection based on seniority, and operational reorganization during the COVID 19 pandemic are legitimate nondiscrimination reasons. *Murguia v. Childers*, 81 F.4th 770, 776 (8th Cir. 2023).

Plaintiff contends MBMC proffered reasons are pretextual for a number of reasons. First, she points to the fact that Michelle Franken, an Assistant Nurse Manager in the Service Line, who has less seniority than Plaintiff and does not have the same genetic disorder, was furloughed and then later recalled by MBMC to return to work. Ms. Franken, however, was not "similarly situated in all relevant respects" to Plaintiff. *Chappell v. Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012). It is undisputed that Ms. Franken was not a Nurse Manager. She was an Assistant Nurse Manager and worked under Plaintiff. MBMC recalling an employee with a different job title does not establish an inference of discrimination or amount to evidence of pretext.

Plaintiff also argues that the temporal proximity of events shows MBMC's proffered reasons create an inference and are pretext for discriminatory animus. Plaintiff points that the fact that a week after she disclosed her genetic disorder to Ms. Reese, Ms. Reese approached Plaintiff about applying for the position of Quality Management.  Plaintiff contends this position was less desirable because it had no direct reports, and there were rumors that it was likely to be eliminated.  In the context of the ADA, a close temporal proximity between an employer being made aware of a disability and the adverse employment action can contribute to an inference of discrimination, although, in general, proximity is not one its own sufficient to establish pretext.  *See Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002); *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001).  But in this case, Plaintiff's argument regarding temporal proximity fails for a number of reasons.

First, encouraging or pressuring Plaintiff to apply for a different position is not an adverse employment action.  It did not affect the terms of conditions of Plaintiff's employment. While Plaintiff perceived the Quality Management position to be a less desirable position, she presented no evidence that it actually was. Further, there is no evidence that Ms. Reese coerced her into applying for the position.  Plaintiff did not apply and was never assigned to the Quality Management position.

19

The adverse employment actions in this case are: (1) placing Plaintiff on furlough and (2) terminating her employment.  Plaintiff disclosed her genetic disorder to her supervisor in February 2020, but she was not placed on furlough until May 2020, which was approximately three months later.  Her employment was terminated two months later in July 2020, which was approximately five months after she disclosed her genetic disorder.  Three months is too remote for an inference of causation, let alone five.  *Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002) ("the interval of two months between the complaint and [plaintiff]'s termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff]'s favor on the matter of causal link.").  Further, there was a major intervening event – the development of unprecedented global pandemic – between February 2020, when Plaintiff informed her supervisor of her genetic disorder, and May 2020, when she was placed on furlough, that would break any causal link based on temporal proximity.  The temporal proximity of events in this case does not establish an inference of discrimination or amount to pretext evidence.

Finally, Plaintiff points to comments Ms. Reese and Plaintiff's colleagues made as evidence of pretext and animosity toward genetic disorders.  In February 2020, after Plaintiff disclosed her genetic disorder, Ms. Reese told Plaintiff that she had been working a lot of hours and that she should consider moving to a less

stressful position at this point in her career.  And sometime thereafter, in late February or early March 2020, there were several discussions among Ms. Reese and several of Plaintiff's colleagues about the effect the arising COVID-19 pandemic might have on individuals who were immunocompromised or had autoimmune disorders, and those with underlying diseases such as cardiac issues, cancer, and respiratory disorders.  Setting aside that these comments were not made at the time of the adverse employment actions in this case, no finder-of-fact could reasonably conclude that the comments demonstrate animosity towards Plaintiff or any person with a genetic disorder.  They neither create an inference of genetic discrimination nor show pretext.

In sum, Plaintiff has pointed to no evidence that supports an inference of discrimination based on genetic information or, alternatively, that MBMC's legitimate non-discriminatory reasons for placing her on furlough and later terminating her employment were pretextual.  Plaintiff has failed to show that there is evidence in this case that would permit a jury to find in Plaintiff's favor, and MBMC is entitled to summary judgment as a matter of law on Plaintiff's claim of discrimination based on genetic information.  *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

### *V.  Conclusion*

For the reasons set out above, the Court finds Plaintiff has waived her arguments as to Counts I-III of her Complaint, and MBMC is entitled to the entry of summary judgment as to Plaintiff claims in these three counts.  As for Plaintiff's claim under GINA, Plaintiff fails to set forth any direct evidence of discrimination based on genetic information.  Further, Plaintiff points to no evidence that supports an inference of discrimination or that MBMC legitimate non-discriminatory reasons were pretextual.  MBMC is entitled to summary judgment as to all claims in Plaintiff's Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Missouri Baptist Medical Center's Motion for Summary Judgment is **GRANTED.**   [ECF No. 61]

An appropriate Judgment shall accompany this Opinion, Memorandum, and Order.

Dated this 2nd day of May, 2025.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE